## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM J. HAWKINS,                     )
                                        )
            Petitioner,                 )
                                        )
    v.                                  )       Civ. A. No. 03-1165-KAJ
                                        )
THOMAS CARROLL, Warden,                 )
                                        )
            Respondent.                 )

## MEMORANDUM OPINION

_____  _____  ____

William J. Hawkins. *Pro se* Petitioner.

Thomas E. Brown, Esq., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

_____  _____  _____

December 8, 2005
Wilmington, Delaware



Jordan, District Judge

## I.    INTRODUCTION

Petitioner William J. Hawkins ("Hawkins") is incarcerated at the Delaware

Correctional Center in Smyrna, Delaware. Before me is Hawkins' petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2.) For the reasons that follow, I will

dismiss his petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

As adduced at trial and detailed by the Delaware Supreme Court on direct

appeal, the facts of Hawkins' case are as follows:

> On November 5, 1999, Hawkins was arrested for beating his then-roommate, Lilliana Mayfield, with a crowbar during an argument. Ms. Mayfield also alleged that after the assault, Hawkins blocked the door and refused to let her leave the garage in which they were living. When Ms. Mayfield was finally able to escape, she went to the hospital and learned that two of her ribs were fractured. The following day, Ms. Mayfield's left lung collapsed as a result of her injuries. Hawkins was indicted on one count of first degree assault, one count of second degree unlawful imprisonment, and possession of a deadly weapon during the commission of a felony. Although trial was initially scheduled for March 20, 2000, the State requested a continuance because it had been unable to secure the appearance of Lilliana Mayfield. Ms. Mayfield was homeless at the time, and locating her proved difficult. After Ms. Mayfield again failed to appear on March 21, 2000, the trial court rescheduled the matter for March 27, 2000, at which time the trial proceeded as scheduled. [Mayfield appeared on the rescheduled trial date and testified as the first witness.]
>
> At trial, during its case-in-chief, the State called Lawrence Demby, an alleged eyewitness to the crime. Demby proved to be a problematic witness because of his inconsistent prior statements. At one point, Demby even claimed not to have been present at all. (Ms. Mayfield consistently testified that Demby was, in fact, present in the garage at the time of the assault.) Once on the witness stand, Demby testified that, although he had originally told both defense counsel and the State that Ms. Mayfield was the aggressor in the altercation, he did so only because Hawkins had pressured him to lie. Following this direct testimony and cross-examination by the defense, the State asked Demby on redirect whether defense counsel had told him that he planned to call him as a

> witness. Defense counsel objected and the court restricted any further
> questioning by the State in this area but gave no curative instruction.

*Hawkins v. State*, 792 A.2d 189 (Table), 2002 WL 384436, at *1 (Del. Mar. 6, 2002).

At the conclusion of that trial, in March 2000, the Superior Court jury convicted Hawkins of second degree assault, second degree unlawful imprisonment, and possession of a deadly weapon during the commission of a felony. The Superior Court sentenced Hawkins as an habitual offender pursuant to 11 DEL. C. ANN. § 4214(a), imposing an aggregate term of thirty (30) years incarceration. *Id.* Hawkins appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *Id.*

In October 2002, Hawkins filed a *pro se* motion in the Delaware Superior Court for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). His Rule 61 motion asserted five allegations regarding his trial counsel's ineffective assistance, and a claim that his grand jury indictment was defective. *See Hawkins v. State*, 839 A.2d 666 (Table), 2003 WL 22957025, at *1 (Del. Dec. 10, 2003). The Rule 61 motion was referred to a Superior Court Commissioner, who issued a Report and Recommendation concluding that the Rule 61 motion should be dismissed because the claims were either procedurally barred under Rule 61(i)(3) or without merit. The Superior Court adopted the Commissioner's Report and Recommendation and denied Hawkins' Rule 61 motion. *Id.*

Hawkins appealed to the Delaware Supreme Court, raising the same claims he presented in his Rule 61 motion, as well as two new claims: (1) his attorney coerced him into not testifying; and (2) the Superior Court should have conducted an evidentiary hearing on his ineffective assistance of counsel claims. *Id.* The Delaware Supreme

2

Court denied the two new claims as meritless, and affirmed the Superior Court's decision with respect to the other claims. *Id.*

In December 2003, Hawkins filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2.) The State filed an Answer, asking the Court to dismiss the petition. (D.I. 13.) Hawkins filed a Traverse. (D.I. 23.)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a state prisoner must exhaust remedies available in the state courts before seeking habeas relief from a federal court. 28 U.S.C. § 2254(b), (c); *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts,* 228 F.3d at 192. To satisfy the exhaustion requirement, a state prisoner must demonstrate that he invoked "one complete round of the State's established appellate review process" by fairly presenting the claim the to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999)*; See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

3

## B.    Standard of Review Under AEDPA

If a federal habeas claim is exhausted and the state court adjudicated the claim

on the merits, then the federal habeas court can grant habeas relief when the state

court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v.*

*Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been

"adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court

"decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on

the substance of the claim advanced, rather than on a procedural, or other ground."

*Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on*

*other grounds*, - U.S. - , 125 S.Ct. 2456 (2005).

AEDPA also requires a federal court to presume that a state court's

determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can

only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and

convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreason-

able application standard of § 2254(d)(2) applies to decisions). This presumption of

4

correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV.   DISCUSSION

Hawkins asserts eight claims in his habeas petition: (1) the trial court committed plain error by admitting prior bad act evidence in contravention of *Getz v. State*, 538 A.2d 726, 734 (Del. 1988); (2) the prosecutor's questioning of the State's witness Larry Demby implied that the defense had an obligation to call witnesses, and therefore, constituted an impermissible comment on Hawkins' right not to testify; (3) the trial court should have granted Hawkins' motion under Superior Court Criminal Rule 48(b) alleging unnecessary prosecutorial delay in bringing his case to trial; (4) the trial court committed reversible error by not declaring Delaware's habitual offender statute unconstitutional or, alternatively, for sentencing him as an habitual offender; (5) his trial counsel provided ineffective assistance for failing to object to hearsay testimony and inadmissible documents, failing to interview or subpoena witnesses at the defendant's request, failing to object to a state witness's testimony and failing to request a *Getz* analysis of that testimony, and failing to ask for a jury instruction on self-defense; (6) unspecified procedures failed to meet the standards set forth in "Federal Rule (6) and the Fifth Amendment"; (7) someone, presumably the trial court, "abused [sic] of discretion" in an unspecified way; and (8) again someone, presumably the trial court, "abused [sic] of discretion" in an unspecified way. (D.I. 2.)

5

As nearly as I can tell, Hawkins presented these claims[1] to the Delaware

Supreme Court on direct appeal or on post-conviction appea, and, thus, he has

exhausted state remedies.

## A. State Law Claims: Claims One, Three, and Six

A federal court may consider a habeas petition filed by a state prisoner only "on

the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not

cognizable on federal habeas review, and a federal habeas court cannot re-examine

state court determinations on state law issues. *Estelle v. McGuire,* 502 U.S. 62, 67-8

(1991)*; Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In Claim One, Hawkins alleges that the Superior Court committed plain error in

admitting prior bad act evidence in contravention of *Getz v. Snyder*, 538 A.2d. 726, 734

(Del. 1988). This claim asserts a violation of state evidentiary law, and is not

cognizable in a federal habeas proceeding. *See, e.g., McLaughlin v. Carroll*, 270 F.

Supp. 2d 490, 514 (D. Del. 2003); *Bright v. Snyder*, 218 F. Supp. 2d 573 (D. Del. Aug.

12, 2002).

In Claim Three, Hawkins contends that the trial court abused its discretion by not

granting his motion asserted under Superior Court Criminal Rule 48(b). Delaware's

Rule 48 is derived from Federal Rule of Criminal Procedure 48(b) and provides, in

---

[1]Using the identical language, Hawkins presented his "abused [sic] of discretion"
claims to the Delaware Superior Court in his Rule 61 motion, and again on post-
conviction appeal. (D.I. 15, *State v. Hawkins*, IK99-11-0375, 0376 & IK99-12-0227,
Comm. Rep. & Rec. at 4 (Del. Super. Ct. June 18, 2003); Appellant's Opening Br. at 14
in *Hawkins v. State*, No. 358,2003).)

6

relevant part, that "[i]f there is unnecessary delay in ... bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Del. Super. Ct. Crim. R. 48(b); *State v. Fischer*, 285 A.2d 417, 418-19 n.3 (Del. 1971); *State v. McElroy*, 561 A.2d 154, 156 (Del. 1989). Although perhaps facially similar to a speedy trial claim, Delaware courts have held that Rule 48(b) motions "serve a broader purpose [than the constitutional limitations of the Sixth Amendment] and [are] not governed by established concepts of the speedy trial clause." *Hughey v. State*, 522 A.2d 335, 340 (Del. 1987)(citing cases); *State v. McElroy*, 561 A.2d 154,156 n.2 (Del. 1989) (finding that "there are instances of dismissal [under Rule 48(b)] involving no denial of constitutional rights.") (citing 8B *Moore's Federal Practice*, ¶ 48.03[1] at 48-16 (2d Ed.)). Delaware's Rule 48(b) is a "codification of the inherent power of a court to dismiss a case for want of prosecution," and Delaware courts engage in two entirely separate analyses for Rule 48(b) motions and speedy trial claims. *Fischer*, 285 A.2d at 418-19 n.3; *McElroy*, 561 A.2d at 156; *see, e.g., Vanlier v. State*, 813 A.2d 1142 (Table), 2002 WL 31883016, at **2-3 (Del. 2002); *State v. Lewis*, 2002 WL 1335304, at *10-13 (Del. Super. Ct. June 17, 2002).

Hawkins presented his Rule 48(b) motion to the state courts as a state law claim without any reference to his speedy trial rights under the Sixth Amendment. In fact, he cited to Delaware Supreme Court opinions that discuss the difference between Rule 48(b) motions and speedy trial claims.[2] Further, the Delaware state courts did not analyze Hawkins' claim in terms of a speedy trial violation. In these circumstances, I

---

[2]Hawkins cited to *State v. McElroy*, 561 A.2d 154 (1989) and *State v. Harris*, 616 A.2d 288 (1992).

7

conclude that Hawkins' Rule 48(b) claim asserts a state law issue that fails to provide a proper basis for federal habeas review

Finally, in his sixth claim, Hawkins alleges that the charges filed against him violated "Federal Rule 6 and the Fifth Amendment." Reading this claim in conjunction with his state court filings, Hawkins appears to contend that the Superior Court did not have jurisdiction to convict him because the grand jury indictment did not contain signatures from all the grand jurors. There is no Fifth Amendment right to indictment by a grand jury in state court criminal proceedings. *Albright v. Oliver*, 510 U.S. 266 (1994). Consequently, any defect in a state grand jury process does not allege a ground for federal habeas review unless it "rise[s] for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode*, 464 U.S. 78, 86 (1983). The absence of grand juror signatures on an indictment is "a mere technical irregularity that is not necessarily fatal to the indictment." *United States v. Titchell*, 261 F.3d 348, 351 (3d Cir. 2001) (quoting *Hobby v. United States*, 468 U.S. 339, 345 (1984)).

Here, Hawkins has failed to demonstrate how the alleged lack of grand juror signatures on his indictment deprived him of his constitutional rights. Further, because Hawkins' indictment contains the signatures of the grand jury foreperson, the grand jury secretary, the Attorney General, and a Deputy Attorney, it appears to be sufficient under Delaware law. *See* Del. Super. Ct. Crim. R. 6(c) (requiring indictment to be signed by grand jury foreperson), and 7(c)(1) (requiring indictment to be signed by Attorney General).

8

Accordingly, I will dismiss claims one, three, and six because they fail to assert issues cognizable on federal habeas review.

## B. Claim Two: Improper Prosecutorial Questioning

Hawkins' second claim asserts that the prosecutor's question to Demby about whether defense counsel had intended to call him as a witness implicated Hawkins' Fifth Amendment privilege to refrain from testifying. Specifically, Hawkins contends that this question improperly commented on his decision not to testify because it implied that he had an obligation to call witnesses.

The Delaware Supreme Court denied this claim as meritless. Therefore, habeas relief will only be warranted if Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly settled federal law as established by the United State's Supreme Court.

In *Griffin v. California*, 380 U.S. 609 (1965), the United States Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615. The Supreme Court has explained that *Griffin* was "concerned only with *adverse* comment, whether by the prosecution or the trial judge," *Lakeside v. Oregon*, 435 U.S. 333, 338-39 (1978) (emphasis added), and that "[a] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

9

To determine if a prosecutorial remark violates *Griffin*, the remark must be viewed in the context in which it was made. *U.S. v. Robinson*, 485 U.S. 25, 33 (1988). The Third Circuit's "well-established test for determining whether a prosecutor's remark violates *Griffin* is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"[3] *Lesko v. Lehman*, 925 F.2d 1527, 1544 (3d Cir. 1991). Specific to the inquiry here, the Third Circuit has held that "it is perfectly proper [for a prosecutor] to comment on the failure of the defense to call a potentially helpful witness ... where ... the comment could not be construed as a comment on the failure of the defendant to testify." *U.S. v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975) (citing cases).

In the instant situation, Demby appeared as a witness for the prosecution. During his testimony, Demby stated that Hawkins asked him to testify falsely about the fight between Hawkins and Mayfield. On re-direct, the State asked Demby if defense counsel had told him (Demby) that he was going to be called as a defense witness. The Delaware Supreme Court concluded that this questioning "was proper follow-up questioning concerning the alleged attempt by Hawkins to procure false testimony from Demby. The question of whether the defense had, at any time, intended to call Demby as a witness was relevant to this inquiry. In this context, therefore, the State's question was not improper and the Superior Court acted within its discretion in permitting it." *Hawkins*, 2002 WL 384436, at *2.

---

[3]The Third Circuit permits district courts to view the opinions of other lower federal courts in ascertaining the reasonableness of the state court's application of clearly established Federal law. *See Fischetti v. Johnson,* 384 F.3d 140, 149 (3d Cir. 2004).

10

Viewing the prosecutor's comment in context with Demby's testimony, I conclude that the Delaware Supreme Court's decision was not contrary to, or an unreasonable application of, *Griffin* and its progeny. In *Griffin*, the prosecutor explicitly referred to the defendant's failure to testify by stating "[t]hese things he has not seen fit to take the stand to and deny or explain. And in the whole world, if anybody would know, this defendant would know. Essie Mae is dead, she can't tell you her side of the story. The defendant won't." *Griffin*, 380 U.S. at 611. In contrast, the prosecutor in Hawkins' case only questioned Demby's recollection as to whether the defense had ever intended to call him as a witness for their side. This inquiry was likely no more than an effort to show that the defense intended to call Demby as a witness until his potential trial testimony changed. The prosecutor's question was not an adverse comment on Hawkins' failure to testify. Therefore, this claim does not warrant federal habeas relief under § 2254(d)(1).

## C. Claim Four: Constitutionality of Habitual Offender Statute

Hawkins' fourth claim alleges that the Superior Court erred in not declaring Delaware's habitual offender statute (11 DEL. C. ANN. § 4214(a)) unconstitutional or, alternatively, the Superior Court erred in designating him as an habitual offender. Section 4214(a) of the habitual offender statute provides:

> Any person who has been 3 times convicted of a felony, other than those which are specifically mentioned in subsection (b) of this section, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony of this state is declared to be an habitual criminal, and the court in which such 4th or subsequent conviction is had, in imposing sentence, may in its discretion, impose a sentence of up to life imprisonment upon the person so convicted. Notwithstanding any provision of this title to the contrary, **any person sentenced pursuant to this**

11

> **subsection shall receive a minimum sentence which shall not be less than the statutory maximum penalty provided elsewhere in this title for the 4th or subsequent felony which forms the basis of the State's petition to have the person declared to be an habitual criminal** ...

11 Del. C. Ann. § 4214(a) (emphasis added). Reading Hawkins' state court filings in conjunction with his habeas petition, he contends that Delaware's habitual criminal statute, as written, does not authorize the State to certify more than one felony as the "fourth" (i.e., qualifying) felony. He argues that when a defendant has committed several felonies that could constitute the fourth or subsequent felony, there are no guidelines governing the State's choice of felonies. Thus, the State can choose the combination that will result in the harshest sentence, and this unfettered discretion violates equal protection, due process, and cruel and unusual punishment because the State can choose different sentences for different defendants.[4] In Hawkins' situation, the State listed both the second degree assault and the weapon charges as the "fourth or subsequent felony." Hawkins was sentenced to eight years on the assault charge, and twenty-two years on the weapon offense.

Hawkins presented this issue to the Delaware Superior Court in a motion to declare the habitual offender statute unconstitutional. The Superior Court denied the motion on the merits. The Delaware Supreme Court affirmed this decision. Therefore, federal habeas relief will be not be warranted unless the state courts' denial of this

---

[4]The State asserts that this claim should be dismissed because it only alleges a violation of state law. However, because I interpret the claim as alleging selective enforcement in violation of Hawkins' federal constitutional rights, I will not dismiss it as a state law claim.

12

claim was either contrary to, or an unreasonable application of, clearly settled federal law as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

It is well-settled that a prosecutor can consciously exercise some selectivity in the enforcement of an habitual criminal statute without violating the Constitution "so long as the 'selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962).); *Government of Virgin Islands v. David*, 741 F.2d 653, 655-56 (3d Cir. 1984). When Hawkins presented this claim to the Superior Court, he did not allege that the State's selection of the felonies for sentencing was based on race or religion. Rather, he argued that his sentence was arbitrarily dependent upon the fourth felony or felonies chosen by the State. Hawkins explained that, if the second degree assault conviction was the fourth felony, then he would have been subject to a sentence for eight years to life. If the possession of a deadly weapon was the fourth felony, then he would have been subject to a sentence of twenty years to life. Finally, if both felonies were listed as the fourth felony, he was subject to a mandatory minimum sentence of twenty-eight years plus two life sentences. (D.I. 15, Appendix to Appellant's Op. Br. in *Hawkins v. State*, No. 411, 2000, at A-189 to A-190.) He also argued that "the ability of one Prosecutor to add years to a Defendant's Sentence by alleging in a Petition more than one Violent Felony, while a different Prosecutor with the same facts can elect not to file a Petition, ... renders the mandatory Level V time a Defendant is to receive 'patently arbitrary,' capricious, and unreasonable and an unconstitutional delegation of authority." (D.I. 15, Appellant's Op. Br. in *Hawkins v. State*, No. 411, 2000, at 34.)

13

The Delaware Supreme Court rejected this argument, noting that under §

4214(a), after a third felony conviction, a defendant must be sentenced as an habitual

offender on each subsequent felony conviction. *Hawkins*, 2002 WL 384436, at \*\*2.

This decision was neither contrary to, nor an unreasonable application of, clearly

established federal law.  The existence of some prosecutorial discretion does not

amount to a constitutional violation, especially when, as here, there is no indication in

the record that the state's decision to list both felonies as the fourth felony was based

upon an impermissible classification other than the valid exercise of prosecutorial

discretion.  Accordingly, I will dismiss this claim for failing to satisfy § 2254(d)(1).

### D.    Claim Five:  Ineffective Assistance of Counsel

Hawkins' fifth claim asserts several instances of ineffective assistance:

1) counsel failed to object to hearsay testimony and inadmissible documents; 2)

counsel failed to interview or subpoena witnesses at the defendant's request; 3)

counsel failed  to object to a state witness's testimony and failed to request a *Getz*

analysis of that testimony; and 4) counsel failed to ask for a jury instruction on self-

defense.  The Delaware Supreme Court denied the claim as meritless.  Therefore, I

cannot grant federal habeas relief unless the state supreme court's decision was either

contrary to, or an unreasonable application, clearly settled federal law established by

the United States Supreme Court.

The "clearly established Federal law" which governs ineffective assistance of

counsel claims is the standard enunciated by *Strickland v. Washington*, 466 U.S. 668

(1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  To prevail on a

14

claim of ineffective assistance of counsel, the petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance actually prejudiced the petitioner's case; in other words, there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 692-94; *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).

> *1.   Defense counsel's failure to object to hearsay testimony and inadmissible documents.*

Reading Hawkins' claim in conjunction with his state court filings, he appears to contend that the medical records were inadmissible and that an expert witness, Dr. Sam Wilson, should not have been permitted to testify about the victim's medical records because they were prepared by another doctor, Dr. Hamilton Carter.  During Hawkins' Rule 61 proceeding, the Superior Court Commissioner concluded that the records were properly admitted under Delaware Rule of Evidence 803(6), and that Dr. Wilson's testimony was admissible because Dr. Wilson had administered emergency surgical treatment to the victim.  (D.I. 15, *State v. Hawkins*, ID No. 9911005395, Commissioner's Rep. & Rec., Freud, A. at 10 (Del. Super. Ct. June 18, 2003)). Consequently, even if counsel objected to the testimony and the admission of the medical records, the Superior Court would have found the objections to be meritless. Because defense counsel cannot be ineffective for failing to make meritless objections, Hawkins has failed to demonstrate that defense counsel provided constitutionally ineffective assistance under *Strickland*.  *See Parrish v. Fulcomer,* 150 F.3d 326, 328 (3d cir. 1998).

### 2. *Counsel's failure to interview or subpoena witnesses*

Once again, reading Hawkins' instant claim in conjunction with his state court filings, he complains that defense counsel failed to investigate three potential witnesses. Defense counsel, however, sent letters to all the potential witnesses identified by Hawkins, though none of them responded. Defense counsel also hired an investigator, who was unable to locate the witnesses. In the absence of any indication as to what else defense counsel should have done to locate the potential witnesses, the Delaware state courts did not unreasonably apply *Strickland* in denying this claim.

Hawkins also alleges that defense counsel failed to subpoena Officer Nick Berna. According to Hawkins, Officer Berna would have testified that Mayfield was intoxicated at the time of the assault. During Hawkins' trial, however, Officer Danny Ranger testified that Mayfield was uncooperative and that Mayfield conceded that she had been drinking beer at the time of the assault. Mayfield's medical records also indicated alcohol use and a lack of cooperation. Thus, because Officer Berna's testimony would only have been cumulative, defense counsel was not ineffective for failing to subpoena him. *See McBride v. Howard*, 1995 WL 617373, at *5 (D. Del. Oct. 6, 1995).

### 3. *Counsel failed to object to witness testimony or request a Getz analysis*

Hawkins contends that defense counsel failed to object to witness testimony or request the trial court to perform an analysis under *Getz v. State*, 538 A.2d 726 (Del.

1988).[5] This claim appears to be based upon Demby's testimony that Hawkins asked him to lie on the witness stand. The Delaware Supreme Court found this claim to be meritless, holding that "Demby's testimony concerning Hawkins' post-crime conduct did not amount to inadmissible propensity evidence. Instead, the evidence was elicited to show consciousness of guilt." *Hawkins*, 2002 WL 384436, at \*\*1. Defense counsel's failure to make a meritless objection does not constitute ineffective assistance.

      *4.    Counsel failed to request a jury instruction on self-defense*

      Hawkins' final complaint about defense counsel's performance is that he failed to request a jury instruction on self-defense. Hawkins did not testify at trial, thus, the self-defense story was not before the trial court. Further, there was no other evidence that Hawkins' attack on the victim was in self-defense. Under Delaware law and Third Circuit precedent, a jury instruction on self-defense is only proper when there is an evidentiary basis on which to premise the instruction. *See* 11 DEL. C. ANN. § 303; *Cf. Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988) (due process does not require a jury instruction unless the proposed instruction is supported by the evidence); *Bishop v. Mazurkiewicz*, 634 F.2d 724, 725 (3d cir. 1980). Defense counsel did not provide ineffective assistance by failing to request a jury instruction to which Hawkins was not entitled.

      Accordingly, I conclude that the Delaware state courts did not unreasonably apply *Strickland* in rejecting Hawkins' ineffective assistance of counsel claim.

---

    [5]In *Getz*, the Delaware Supreme Court provided guidance for determining the admissibility of evidence offered under Delaware Rule of Evidence 404(b), which is based upon Federal Rule of Evidence 404(b). *Getz*, 538 A.2d at 734.

17

## D.    Claims Seven and Eight: Abused [sic] Discretion

Hawkins' final two claims only assert "abused [sic] discretion." I will dismiss

these claims because Hawkins has failed to "state the facts supporting each ground "

for relief under Rule 2(c) of the Rules Governing Section 2254 Petitions, 28 U.S.C. foll.

§2254. *See Biggins v. Carroll*, 2002 WL 31094810, at *5 (D. Del. Sept. 13, 2002).

## V.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court

must also decide whether to issue a certificate of appealability. *See* Third Circuit Local

Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner

makes a "substantial showing of the denial of a constitutional right" by demonstrating

"that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

484 (2000).

I conclude that Hawkins' habeas petition does not warrant federal habeas relief. I

do not believe reasonable jurists would find this conclusion to be debatable.

Consequently, I will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Hawkin's petition for habeas relief pursuant to 28 U.S.C.

§ 2254 is denied. An appropriate order will follow.

18